**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| NICOLE WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-02511-TWP-DML |
| | ) | |
| REGAL BELOIT CORPORATION[1], | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant Regal Beloit Corporation ("Regal") (Filing No. 11). Plaintiff Nicole Wilson ("Wilson") initiated this action after witnessing two male supervisors in a verbal altercation, which caused her stress, anxiety and prompted resignation from her employment. She filed the instant Complaint against Regal, her former employer, alleging Violation of the Americans with Disability Act ("ADA"), Retaliation under the ADA, Violation of the Family Medical Leave Act ("FMLA"), Violation of Title VII of the Civil Rights Act, Violation of Title VII Retaliation, False Imprisonment, and Intentional Infliction of Emotional Distress. For the reasons discussed below, Regal's Motion is **granted in part and denied in part**.

## I.     BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Wilson as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

---

[1] Defendant asserts that Plaintiff has improperly identified it as Regal Beloit Corporation; Plaintiff was employed by Regal Beloit America, Inc., a wholly owned subsidiary of Regal Beloit Corporation. (Filing No. 12 at 1 fn. 1).

Regal manufactures and supplies electric motors to customers throughout the country and globally. In August 2017, Wilson was hired into a logistical and distribution position at the Regal location in Plainfield, Indiana. Wilson is a qualified individual with a disability and was perceived by Regal to be disabled under the definition of ADA. (Filing No. 1 at 2 ¶¶ 6,7) She suffers from mental health conditions, as noted by her doctor in May 2018 and as part of her Family Medical Leave FMLA certification. Wilson's conditions cause mental impairments that intermittently prevent her from working. In May 2018, her physical condition was known to her supervisors, who recognized that Wilson was frequently unable to work and had frequent doctors' appointments. After becoming aware of her disabilities, Wilson's supervisors accommodated her by allowing her the time she needed to recover and to attend doctors' appointments. (Filing No. 1 at 3.)

On May 10, 2018, Wilson was having a meeting in the Plainfield office with two male colleagues. During the meeting, Wilson's male supervisor entered the room in a fit of rage and closed the door to the office. *Id*. at 4. The supervisor demanded Wilson's manager let him know what was being discussed. The supervisor's fists were clenched, and he positioned his body in front of Wilson's manager. *Id*. Wilson was sitting next to the supervisor and became uncomfortable with the physical and verbal confrontation that her supervisor initiated. *Id*.

Wilson asked if she could exit the room since she did not have any reason to be involved in the altercation, but the supervisor ignored her request and blocked Wilson's ability to exit through the closed door. Wilson crouched down in her chair and leaned away from the supervisor to avoid being struck if a physical altercation occurred. She then asked a second time if she could leave. The supervisor did not acknowledge Wilson or her request and continued to block Wilson's ability to leave the room. *Id* at 4. The supervisor began a tense conversation with Wilson's manager

and Wilson was told by the other male colleague present in the room to remain seated to avoid being battered by the supervisor. *Id*. at 5. The yelling from the conversation between the supervisor and Wilson's manager could be heard by a female colleague who became concerned for Wilson's safety and contacted her via text message to ask if she was okay. The verbal altercation ended when the supervisor asked Wilson's manager to meet in the supervisor's office. *Id*.

Wilson went to the restroom to regain her composure and then contacted a representative in the Human Resources (HR) department. After several meetings with HR, the supervisor was reassigned to a different position but continued to work in the Plainfield, Indiana, office. Wilson no longer reported to the supervisor, but she advised a representative of HR in an email and during meetings that she was afraid to be in the Plainfield office when the supervisor was at the location. Other female employees also complained to the HR Resource Director that this supervisor made them uncomfortable and afraid. The HR representative took the position that nothing happened and no further action was required.

After the supervisor discovered that Wilson had made complaints to HR and he was being investigated, his negative attitude, harassment and retaliation against Wilson intensified. The situation caused Wilson mental and physical anguish and she began meeting with a counselor to help deal with the stress and anxiety created by the supervisor. Wilson would hide in her office or the restroom to avoid interacting with the supervisor when he was present in the building. Her despair was further compounded by the HR representative who maintained the supervisor did not act inappropriately because Wilson did not receive any bodily injury. Wilson requested several leaves of absence to deal with the mental and physical conditions created by the May 10, 2018 incident. *Id* at 6.

A male employee who reported to Wilson was offered an opportunity to travel and Wilson was not extended an invitation even though the male employee has only been employed for a short period of time. *Id.* at 6. Wilson experienced offensive conduct such as offensive slurs, epithets or name calling, physical assaults, threats, ridicule, mockery and interference with her work performance. *Id.* at 8 ¶55. As a result of the hostile work environment created by the supervisor, Wilson resigned from her employment, but was terminated prior to her last scheduled day of work. *Id*. ¶ 58. During her employment, her annual evaluations were satisfactory or better.

Wilson filed this lawsuit against Regal on June 21, 2019. She is seeking back pay, bonuses, and fringe benefits as well as compensatory, liquidated, and punitive damages. On July 22, 2019, Regal filed a Motion to Dismiss, asking the Court to dismiss all claims asserted against it. ([Filing No. 11](#)).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of

action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III.   DISCUSSION

Wilson alleges the following claims: Count I-Violation of the ADA, Count II-Retaliation under the ADA, Count III-Violation of FMLA, Count IV-Violation of Title VII of the Civil Rights Act, Count IV-Violation of Title VII Retaliation, Count V-False Imprisonment, and Count VI-Intentional Infliction of Emotional Distress. (Filing No. 1.) Regal argues the Court should dismiss the claims in Wilson's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court will address the various claims below.

### A.   Wilson's Hostile Work Environment Claim

Regal argues the Court should dismiss all Title VII claims asserted against it because Wilson's claims consist of nothing more than legal conclusions and speculation. To allege a viable Title VII Hostile Work Environment Claim against Regal, Wilson must allege with sufficient facts the following: (1) her work environment was both objectively and subjectively offensive; (2) the harassment complained of was because of her gender; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability. *Scruggs v. Garst Seed Co.* 587 F.3d 832,

840 (7th Cir. 2009). In order to survive a motion to dismiss on the basis of gender discrimination, Wilson must allege that Regal instituted an adverse employment action against her "on the basis of her sex." *Joren v. Napolitano* 633 F.3d 1144 (7th Cir. 2011).

Regal argues that Wilson's Hostile Work Environment claim should be dismissed because Wilson does not allege facts to support a conclusion that any conduct occurred because of her sex or that she experienced a hostile work environment as a result of her sex. Instead, Wilson's Complaint focuses on a verbal confrontation Wilson witnessed between two male colleagues and provides no link between that confrontation and her gender. (Filing No. 12).

In response, Wilson contends the court should "ask could these things happen, not did they happen." Wilson also restates that she suffered mental anguish and would hide in the office or restroom to avoid interacting with her former supervisor. (Filing No. 14).

While it is true that the Court need not determine whether a claim is probable to survive a Motion to Dismiss, the complaint must plead enough facts to state a claim for relief that is "plausible on its face." *See Twombly*, 550 U.S. at 570. Here, Wilson does not allege sufficient facts to establish the elements required for a plausible Title VII Hostile Work Environment Claim. Wilson hiding in her office and the restroom to avoid her former supervisor may be enough to meet the element that the "conduct was so severe or pervasive because it altered the conditions of her employment"; however, in order to survive a motion to dismiss, the plaintiff must alleges sufficient enough facts to support *all* of the material elements of her claim. *See Twombly*, 550 U.S. at 555. In Wilson's complaint, there are no allegations or facts that support the legal conclusion that she was subject to "harassing and offensive conduct" which was "rooted in sex and gender." (Filing No. 1). Accordingly, Regal's Motion to Dismiss the Title VII Hostile Work Environment claim is **granted.**

**B. Wilson's Retaliation Claim**

Regal argues the Court should dismiss the Retaliation claim because Wilson failed to connect any adverse employment action with her complaint to HR with anything other than conclusory allegations. To allege a viable Retaliation claim, a plaintiff must allege sufficient facts showing that: (1) she engaged in "statutorily protected activity" (2) she suffered "adverse employment action," and (3) there was a "causal connection" between the two. *Wetzel v. Glen St. Andrew Living Community,* LLC 901 F.3d 856, 868 (7th Cir. 2018).

The parties do not dispute that Wilson engaged in statutorily protected activity by filing a complaint with HR. However, Regal argues that Wilson provides no facts of the alleged "harassment" and "threatening activity" she claims she suffered and reported to HR, nor does Wilson connect the termination to her initial complaint. ([Filing No. 12](#)).

Wilson responds that she was subjected to adverse employment actions for complaining to HR when she was unfairly passed up for the opportunity to travel, when she received workplace threats and reprimands, when her supervisor intimidated her and when he expressed a desire to terminate her once he learned of her complaints and request for accommodation. ([Filing No. 14](#)). In Regal's Reply, it contends that Wilson fails to allege conduct that constituted retaliation and argues that a male employee being given a "lucrative opportunity to travel" is not sufficient. Regal also contends that Wilson provided no examples of the alleged threats, reprimands, intimation, or supervisor's "expression" to terminate her. ([Filing No. 16](#)).

Here, Wilson does not allege enough facts to support a Retaliation claim. An employer's action is "materially adverse" if it is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *James v. Hyatt Regency Chi.*, 707 F.3d 775, 782 (7th Cir. 2013). The Court does not find a male employee being offered the opportunity to take a business trip, despite being

employed at Regal for a shorter time, sufficient facts to support a retaliation claim. Further, Wilson does not allege any facts to connect the employee being given the opportunity to travel instead of her to her complaints to HR. Wilson has not pled constructive discharge as an adverse action and has not articulated a causal link between her protected activity and her resignation/termination. The additional factual allegations of workplace threats, reprimands, and an "expressed" desire to fire Wilson are generalizations and not specific facts to support a retaliation claim. Accordingly, Regal's Motion to Dismiss the Title VII Retaliation claim is **granted.**

## C. Wilson's ADA Claims

To establish a prima facie case of ADA discrimination, Wilson must show: (1) she is disabled; (2) she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) Defendant took adverse job actions against her because of her disability or failed to make reasonable accommodations. See *Stevens v. Illinois Dep't of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000). Regal argues that all of Wilson's ADA claims fail because Wilson "alleges no facts from which the Court can infer she is a qualified individual with a disability" and because she pled no facts to support an inference that Regal engaged in any discriminatory conduct because she was disabled. (Filing No. 12). Regal asserts that Wilson's conclusory statement that she was a qualified individual with a disability who was capable of performing the essential functions of her job with a reasonable accommodation is the type of conclusory, formulaic allegation forbidden by *Twombly*. *Id.* at 10.

In order to establish a prima facie case for discrimination or retaliation under the ADA, Wilson must first allege that she is disabled. *See Prince v. Illinois Department of Revenue*, 73 F.Supp. 3d 889, 893 (N.D. Ill. 2010). The ADA defines a disability as a "physical or mental impairment that substantially limits one or more of the major life activities of the individual of the

individual, "a record of such impairment," or "being regarded as having such an impairment." 42 U.S.C. §12102(1). *Id.* An impairment substantially limits a major life activity when a person "is either unable to perform a major life activity or is significantly restricted as to the condition, manner or duration under which the individual can perform the major life activity as compared to the average person in the general population." *Furnish v. SVI Sys., Inc.,* 270 F.3d 445, 450 (7th Cir.2001) (citations omitted). Here, Wilson does not make any allegations that she is disabled under the statutory definition, she merely states that she has "certain physical and mental health conditions" which are acknowledged by a doctor's note to constitute a disability under the ADA. ([Filing No. 1](#)). In addition, she makes no allegations that those conditions substantially limit a major life activity. The information pled by Wilson is not sufficient to support a claim under the ADA.

Moreover, even if Court were to find that Wilson sufficiently pled that she has a qualified disability, she has not alleged any facts to support that Regal took adverse job actions against her because of her disability or failed to make reasonable accommodations. Wilson alleges that she "has been punished for asserting her rights to be free from employment discrimination and harassment" ([Filing No. 1 at 7](#)¶ 49), but she does not sufficiently allege any adverse actions due to her disability. Nor does she allege that she requested any particular accommodation or that such accommodation request was refused. Since Wilson does not factually allege a disability recognized by the ADA, or sufficiently pled the other elements of ADA discrimination, Regal's motion to dismiss Wilson's ADA claims **is granted.**

**D.  Wilson's FMLA Retaliation Claim**

Regal argues Wilson's FMLA retaliation claim should be dismissed because Wilson never pled that she was entitled to FMLA. ([Filing No. 12](#)). The Court agrees with this assertion. To

establish an FMLA claim, Wilson must establish: (1) she was eligible for the FMLA's protections; (2) her employer was covered by FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). Wilson does not plead a single element required to establish an FMLA claim. Instead, Wilson merely asserts FMLA retaliation, alleging that she requested leave and was denied. Since Wilson does not plead that she was entitled to FMLA, she provide notice of her intent to take leave and Regal denied her FMLA benefits, her retaliation claim cannot survive. Accordingly, Regal's motion to dismiss Wilson's FMLA Retaliation claim **is granted.**

**E.  Wilson's False Imprisonment Claim**

Regal argues that Wilson's False Imprisonment claim should be dismissed because Wilson fails to show the supervisor intended to confine Wilson in the office. Regal further contends that any confinement Wilson experienced was incidental to the argument Wilson witnessed in the room. ([Filing No. 12](#)).

Under Indiana Law, "false imprisonment is defined as the unlawful restraint upon one's freedom of movement or deprivation of ones liberty without consent." *Earles v. Perkins,* 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003). To establish a claim of false imprisonment, the defendant must act "intending to confine the other or a third person within boundaries fixed by the actor. RESTATEMENT (SECOND) OF TORTS §35. Similarly, where the defendant's actions are unintentional, a claim may not lie for "merely transitory or otherwise harmless confinement." *Id.* In proving restraint on freedom of movement, incarceration need not be shown, rather, it is sufficient to show a person's freedom of movement was in some manner restricted against his will. See *Delk V. Board of Com'rs of Delaware County,* 503 N.E. 2d 436, 439 (Ind. Ct. App. 1987).

Wilson alleges that she was having a meeting with two male colleagues when her supervisor entered the room, closed the door behind him and began a "heated, tense conversation with Wilson's manager." (Filing No. 1 at 5 ¶24, ¶32). She asked to leave but her request was ignored. The supervisor blocked her ability to exit through the closed door. When Wilson asked a second time to leave the room, she was again ignored. Wilson was told by the other male colleague present in the room to remain seated to avoid being battered by the supervisor. *Id*. ¶32. She eventually was able to leave after the confrontation in the room ended. (Filing No. 14).

In order for a false imprisonment to be present, there must be an actual intent to restrain. Wilson has not alleged that the supervisor intentionally blocked her ability to leave the room or that his intent was to restrain her from leaving the room. Instead, the facts appear to show the supervisor was so caught up in the heated argument with the manager, that he ignored Wilson's requests to leave the room. The other male colleague present in the room was the person that suggested Wilson remain seated and not leave the room. As pled, these allegations fail to satisfy the intent prong.

Wilson must also allege facts to show that the restraint of movement was unlawful. She has not alleged this element and thus has failed to plead enough facts to support a claim that is plausible on its face. *See Twombly*, 550 U.S. at 570. Accordingly, Regal's motion to dismiss the False Imprisonment claim is **granted.**

## F. Wilson's Intentional Infliction of Emotional Distress Claim

Finally, Regal argues that Wilson's Intentional Infliction of Emotional Distress ("IIED") Claim should be dismissed because Wilson fails to allege the "type of beyond-the-pale, outrageous conduct" that would state a claim for IIED. In order to establish a claim for IIED, Wilson must allege proof that the defendant: (1) engaged in extreme and outrageous conduct; (2) intentionally

or recklessly (3) caused (4) severe emotional distress to another. *Curry v. Whitaker,* 943 N.E.2d 354, 361 (Ind. Ct. App. 2011). "The requirements to prove this tort are 'rigorous.'" *Id.* If a complaint fails to contain sufficient factual allegations that the defendant intended to emotionally harm the plaintiff, the complaint may be dismissed for failure to state a claim upon which relief can be granted. See *Tucker v. Roman Catholic Diocese of Lafayette-In-Indiana*, 837 N.E.2d 596 at 603. (Ind. Ct. App. 2005).

Regal argues that outside of the argument between the supervisor and manager that Wilson observed, her complaint does not include any factual allegations about any type of extreme or outrageous conduct from anyone. (Filing No. 11).

Wilson contends that she has established enough to support her claim through the allegations that she "grew uncomfortable", "cowered in her chair" and "had to go to the restroom to regain composure." (Filing No. 14 at 16). Wilson also notes that she alleges the conduct was intentional or reckless, and she asserts multiple times in the Complaint that this outrageous behavior caused her extreme emotional distress. *Id.* For example, she alleges "the situation caused Wilson mental and physical anguish and she began meeting with a counselor to help deal with the stress and anxiety created by her supervisor" and "she would hide in her office or the restroom to avoid interacting with the supervisor". (Filing No. 1 at 5 ¶¶ 39 and 40). She also alleges that she experienced offensive conduct such as offensive slurs, epithets or name calling, physical assaults, threats, ridicule, mockery and interference with her work performance, after the supervisor learned that she had complained about him to HR.

A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court finds that Wilson has provided sufficient facts to

support her IIED claim. Whether this claim as pled can survive on summary judgment is a question for another day. Accordingly, Regal's motion to dismiss Wilson's Intentional Infliction of Emotion Distress claim is **denied.**

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Regal's Motion to Dismiss. (<u>Filing No. 11</u>). Count VI-Regals claim for Intentional Infliction of Emotional Distress survives and the Motion to Dismiss this claim is **denied**. The Motion to Dismiss Counts I, II, III, IV, and V is **granted** and those counts are dismissed. The Court concludes that dismissal should be **without prejudice.** Fed. R. Civ. P. 15 directs that courts should "freely" grant leave to amend a pleading "when justice so requires". Fed. R. Civ. P. 15(a)(2). Wilson is granted thirty (30) days from the date of this Order to amend her Complaint to replead her dismissed claims against Regal.

**SO ORDERED.**

Date:     2/14/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jonathan A. Becker
CHURCH CHURCH HITTLE & ANTRIM
jbecker@cchalaw.com

Brent R. Borg
CHURCH CHURCH HITTLE & ANTRIM
bborg@cchalaw.com

Craig M. Borowski
LITTLER MENDELSON, P.C.
cborowski@littler.com

Rebecca L. Loeffler
LITTLER MENDELSON, P.C.
RLoeffler@littler.com